UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| KEY ELECTRONICS, INC., | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) 4:13-cv-00098-SEB-DML |
| EARTH WALK COMMUNICATIONS, INC., | ) |
| Defendant. | ) |

**ORDER DENYING DEFENDANT'S MOTION
TO DISMISS OR TO TRANSFER VENUE**

This cause is before the Court on Defendant's Motion to Dismiss. Defendant contends pursuant to Federal Rule of Civil Procedure 12(b)(2), that the Court lacks personal jurisdiction, or in the alternative, that transfer of this case is appropriate to the Eastern District of Virginia based on the doctrine of *forum non conveniens* pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, the motion is DENIED.

**STATEMENT OF FACTS**

Defendant EarthWalk Communications, Inc. ("EarthWalk") is a Virginia corporation with its principal place of business in Manassas, Virginia. McConnell Decl. ¶ 4. EarthWalk does not own or possess property in Indiana, have an Indiana address or telephone number, pay Indiana taxes, have an Indiana bank account, or have agents of any type in Indiana. *Id.* at ¶¶ 8–11. EarthWalk sells energy-efficient electronic equipment such as mobile computer labs for education and training technology. *Id.* at ¶ 6. EarthWalk does not advertise its products

1

specifically in Indiana, and since 2009, less than two percent of the company's total revenue has been generated from products sold in our state.[1] *Id.* at ¶¶ 7,13.

Plaintiff Key Electronics, Inc. ("Key Electronics") is an Indiana corporation with its principal place of business in Jeffersonville, Indiana, where it manufactures its products. Hardy Aff. ¶ 3. Key Electronics is a contract manufacturer offering electronic circuit card assembly, product integration, and testing and repair of electronics with the International Standard Organization quality systems certifications. *Id.* at ¶ 4.

In November of 2005, the President of EarthWalk, Evan T. McConnell, contacted Key Electronics to inquire about a possible business relationship. *Id.* at ¶ 5. At the time, EarthWalk had an existing relationship with another Indiana company—Indesign, LLC ("Indesign")—which designs electronic products and systems for EarthWalk. *Id.* Indesign recommended Key Electronics to EarthWalk as a company that could manufacture the products designed by Indesign for EarthWalk. *Id.* at ¶ 6. In December of 2005, representatives and officers of EarthWalk, including McConnell, travelled by private airplane to Jeffersonville, Indiana, to inspect Key Electronics' facility and determine whether the company would be an appropriate manufacturing partner for EarthWalk. *Id.* at ¶¶ 7, 10.

In January of 2006, the parties entered into a seven-year business relationship, lasting until 2012. *Id.* at ¶ 8. As part of this relationship, EarthWalk sent purchase orders to Key Electronics specifying the parts it desired, and Key Electronics manufactured and shipped the parts to EarthWalk based on the requested design. *Id.* at ¶ 9. EarthWalk then incorporated the Key Electronics parts into its mobile computers labs and sold them to the end users. *Id.* During

---

[1] EarthWalk did not provide the exact percentages of revenue generated before or after 2009.

the course of the parties' relationship, Key Electronics manufactured approximately $3 million worth of EarthWalk-designed parts at its Indiana facility. *Id.* at ¶ 12. Throughout the course of the relationship, EarthWalk representatives made "multiple" visits to Key Electronics' Indiana facility, sent "multiple correspondences" to Key Electronics representatives in Indiana, and initiated "countless" telephone call to Indiana.[2] *Id.* at ¶ 10–11.

On July 19, 2013, Key Electronics filed this suit against EarthWalk alleging that Key Electronics sent to EarthWalk or EarthWalk possessed specially-manufactured component parts for EarthWalk's computer systems that were produced in its Indiana facility, and that EarthWalk has refused to remit payment. Compl. at ¶¶ 8–9.

EarthWalk represents in its motion that it intends to call several witnesses from inside or near Virginia to testify in this case. McConnell Decl. at ¶¶ 14–16. EarthWalk has also retained several finished computers at its Virginia office that it claims it intends to make available for "on-site inspection" by the parties' respective experts. *Id.* at ¶ 17. EarthWalk also emphasizes that the purchase orders disputed in this case do not contain language that requires Key Electronics to produce its component parts in Indiana, nor do they require that the parties litigate potential disputes in Indiana. *Id.* at ¶ 18.

In response, Key Electronics claims that it intends to call several witnesses who are residents of Indiana in order to prosecute its case. Pl.'s Resp. 15. Further, Key Electronics notes that it did not build the computers stored by EarthWalk in Virginia; rather, it built only circuit boards for them. *Id.*

---

[2] Key Electronics claims in its brief and in the Hardy Affidavit that EarthWalk representatives made multiple visits, sent multiple correspondences, and initiated countless telephone calls to Indiana over the course of the business relationship; however, the number and frequency of these contacts were never specified. Pl.'s Resp. 3; Hardy Aff. ¶¶ 10–11.

I.      PERSONAL JURISDICTION

**Legal Standard**

Federal Rule of Civil Procedure 12(b)(2) permits the dismissal of a claim for lack of jurisdiction over the person or entity. *Noble Roman's, Inc. v. French Baguette, LLC*, 2008 WL 975078, at *2 (S.D. Ind. Apr. 8, 2008). In considering a 12(b)(2) motion, this Court examines the sufficiency of the plaintiff's complaint as opposed to the merits of the lawsuit, and directs dismissal "only if it appears to a certainty that the plaintiff can establish no basis for asserting personal jurisdiction." *Id.* "[A] complaint need not include facts alleging personal jurisdiction." *Steel Warehouse of Wis., Inc. v. Leach,* 154 F.3d 712, 715 (7th Cir. 1998). However, once the defendant moves to dismiss the complaint under Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 781–82 (7th Cir. 2003). The plaintiff need only make out a *prima facie* case of personal jurisdiction and is entitled to have any conflicts in the affidavits or supporting materials resolved in its favor. *Id.* at 782. We accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff bearing on personal jurisdiction. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). However, if a complaint consists of conclusory allegations unsupported by facts, it fails even under the liberal standards of Rule 12(b)(2). *Id.*

**Discussion**

A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction. *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir.2002). Whether an Indiana state court would have jurisdiction over

EarthWalk requires a two-step inquiry. *Int'l Med. Grp., Inc. v. Am. Arbitration Ass'n, Inc.,* 312 F.3d 833, 846 (7th Cir. 2002). First, we determine whether the personal jurisdiction would comport with Indiana's long-arm statute, Indiana Trial Rule 4.4(A). *Id.* Second, we determine whether exercising personal jurisdiction would comport with the requirements of the 14th Amendment's Due Process Clause. *Id.*

In Indiana, the two inquiries collapse into one. Indiana Trial Rule 4.4(A) "reduce[s] analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the [f]ederal Due Process Clause." *LinkAm. Corp. v. Albert*, 857 N.E.2d 961, 967 (Ind. 2006). Therefore, we may limit our analysis in this case to determining whether exercising personal jurisdiction would violate the defendant's due process rights.

Federal Due Process requires that a defendant have sufficient "minimum contacts" with a forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Purdue Research Found.*, 338 F.3d at 780 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–317 (1945)). In determining whether it is fundamentally fair to require a defendant to submit to the jurisdiction of the court, we focus on the factor of foreseeability; specifically, whether the defendant could have anticipated being haled into the courts of the Indiana with respect to the matter at issue. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This requirement is designed to ensure that the defendant retains sufficient control of its activities so that it may reasonably anticipate whether it might be subject to suit in a given jurisdiction. *Burger King,* 471 U.S. at 472.

Additionally, there must be some showing that the defendant purposefully availed itself of the privilege of conducting activities within the forum state. *Id*. at 475. Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity. *Id.* at 474. This requirement ensures that a defendant's amenability to jurisdiction is not based on fortuitous contacts, but on contacts that demonstrate a real relationship with the state with respect to this transaction. *Id.*

Personal jurisdiction may be either general or specific. *See Alpha Tau Omega v. Pure Country, Inc.,* 185 F. Supp. 2d 951, 956 (S.D. Ind. 2002). Specific jurisdiction over a defendant exists if the case or controversy "arises out of" the defendant's contacts with the state, creating a relationship among the defendant, the forum, and the litigation. *Helicopteros Nacionales de Colom., S.A. v. Hall,* 466 U.S. 408, 414 (1984). General jurisdiction over a defendant, however, exists only if the defendant has "continuous and systematic" contacts with the forum state. *Hyatt Int'l*, 302 F.3d at 713.

Although it is unclear whether EarthWalk had "continuous and systematic" contacts sufficient to support a finding of general personal jurisdiction, we need not decide that matter as it is clear from the facts that there is a sufficient basis on which to find specific personal jurisdiction in this case.

### A. Specific Personal Jurisdiction

This Court has specific personal jurisdiction over a defendant where: (1) the defendant has purposefully directed its activities at the forum state or purposefully availed itself of the privilege of conducting business in the state; (2) the alleged injury arises out of the defendant's

forum-related activities; and (3) the exercise of specific jurisdiction comports with traditional notions of fair play and substantial justice. *Felland*, 682 F.3d at 673.

**1. Purposeful Availment or Directed Conduct**

First, we address whether EarthWalk purposefully directed its activities at Indiana or purposefully availed itself of the privilege of conducting business in Indiana. *See Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). As previously mentioned, the "purposeful availment" requirement ensures that a defendant will not be hauled into a jurisdiction solely as a result of "random, fortuitous, or attenuated contacts," or as the result of the unilateral activity of another party or a third person. *Burger King*, 471 U.S. at 475. Rather, jurisdiction is proper where the contacts result from actions of the defendant which create a "substantial connection" with the forum state. *Id.* If the defendant has deliberately engaged in significant activities within a state, or has created continuing obligations between itself and the state's residents, then it has availed itself of the privilege of conducting business there and is required to submit to the burdens of litigation in that forum as well. *Id.* at 475–76.

It is Plaintiff's position in this case that "[b]y soliciting and subsequently engaging in a seven-year business relationship with an Indiana manufacturing corporation (and accepting approximately $3 million worth of product), EarthWalk purposefully availed itself of the privilege of conducting business in Indiana." Pl.'s Resp. 7.

With respect to such interstate contractual obligations, the Supreme Court has emphasized that "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanction in the other state for the consequences of their activities." *Burger King*, 471 U.S. at 473. Likewise, Indiana courts

have held a defendant purposefully avails himself of the benefits and responsibilities of doing business in Indiana by soliciting, negotiating, and forming a contract with an Indiana resident. *See Woodmar Coin Ctr., Inc. v. Owen*, 447 N.E.2d 618, 621 (Ind. Ct. App. 1983); *see also Noble Roman's*, 2008 WL 975078, at *4 (finding personal jurisdiction where a defendant deliberately entered into a long-term agreement with a plaintiff, which was an Indiana Corporation).

However, an out-of-state party's contract with an in-state party is not enough alone to establish the requisite minimum contacts. *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1277 (7th Cir. 1997). Rather, prior negotiations, contemplated future consequences, the terms of the contract and the parties' actual course of dealing must indicate the purposeful availment required of the defendant. *Id.*

Here, the President of EarthWalk, Evan McConnell, first made contact with Key Electronics in November of 2005, Hardy Aff. at ¶ 5, followed soon thereafter by a visit—accompanied by other EarthWalk representatives—to Key Electronics' Indiana facility to negotiate a potential business relationship between the parties. *Id.* at ¶ 7. After entering into the business relationship in January of 2006, EarthWalk representatives visited the Indiana facility numerous times, corresponded with Key Electronics' Indiana representatives on multiple occasions, made countless phone calls to Indiana concerning the relationship, and exchanged approximately $3 million in products over the course of seven years. *Id.* at ¶ ¶ 10–12.

EarthWalk has argued that the size of its transactions with Key Electronics—$3 million—can hardly be a principled basis for distinguishing this case from any other or for ignoring the requirement of minimum contacts. Def.'s Br. 9 (citing *See Lakeside Bridge & Steel Co. v. Mountain State Const. Co.*, 597 F.2d 596, 604 (7th Cir. 1979)). However, the holding in

*Lakeside Bridge & Steel*, is inapposite, given that the contacts between the parties all occurred outside the forum state, the plaintiff solicited the work from the defendant, and the defendant was found to have simply placed an order with the plaintiff. 597 F.2d 598 at 604. The dollar amount of the transaction in that case would not have been a sufficient basis for finding personal jurisdiction over the defendant. Here, by contrast, EarthWalk engaged in an ongoing business relationship with Key Electronics that involved physical visits to Indiana by EarthWalk representatives in addition to correspondences with the Indiana corporation via telephone and other medium. Hardy Aff. ¶¶ 10–11. Thus, although the dollar amount of this transaction is one indication of the significance of the parties' business relationship, it is certainly not the only determinative factor in this case.

Defendant has also argued that because nothing in the purchase orders mandates that the parties litigate their dispute in Indiana, Earth Walk has not purposefully availed itself of the benefits of Indiana law and cannot be subjected to specific personal jurisdiction. Pl.'s Resp. 10. The terms of the contracts may be a factor of consideration, but the lack of specific terms mandating that Indiana serve as the forum is not enough to outweigh the other evidence of Defendant's purposeful availment conduct. *See RAR, Inc.,* 107 F.3d at 1277 (listing the terms of the contract as one of many considerations in determining the defendant's purposeful availmant). EarthWalk reached out to establish a continuing relationship with Key Electronics, an Indiana Corporation, and thus purposefully availed itself of the benefits of doing business in Indiana.

### 2. Injury "Arising Out Of" the Defendant's Contacts with the Forum State

Even where a defendant's conduct is purposefully directed at the forum state, the plaintiff must also show that his injury "arises out of" or "relates to" the conduct that comprises the

defendant's contacts. *See Tamburo*, 601 F.3d at 708. In other words, a defendant's contacts with the forum state must have a "substantial connection" to the plaintiff's action. *Kaempe v. Myers*, 2001 WL 1397291, at *2 (S.D. Ind. Nov. 6, 2001).

For this reason, there can be no specific jurisdiction where a defendant's ongoing business relationship with the plaintiff does not *directly* give rise to the cause of action. *See RAR, Inc.*, 107 F.3d at 1277–1278 (7th Cir. 1997) (holding that the court may not simply aggregate all of the defendant's contacts with a state as evidence of the constitutionally-required minimum contacts because "individuals and corporations must be able to conduct interstate business confident that transactions in one context will not come back to haunt them unexpectedly in another").

Here, EarthWalk argues that its prior dealings with Key Electronics are insufficient to show that the current dispute over the purchase orders arose out of its contacts with Indiana. Def.'s Br. 8–9. Simply put, EarthWalk maintains that the presently-disputed purchase orders should be separated from any prior transactions between itself and Key Electronics for the purposes of determining the sufficiency of its Indiana contacts.

This argument misapprehends the Seventh Circuit's holding in *RAR, Inc.* As the court made clear, the parties' past course of dealings is relevant and the finding of a "continuing relationship or obligation" must be considered in light of the similarities between the disputed transaction and prior transactions. *Id.* at 1279 (citing *Heritage House Rests, Inc. v. Cont'l Funding Grp., Inc.,* 906 F.2d 276, 278–279 (7th Cir. 1990)). Strong similarities between the transactions "immediately suggest the substantive relevance of the past transactions," because

later transactions may incorporate understandings formed during prior transactions, and a suit regarding later transactions might actually hinge on those prior understandings. *Id.*

EarthWalk has given no evidence that the disputed purchase orders are in any way different than the prior transactions conducted by the parties during their seven-year business relationship. Rather, when considered in light of the parties' prior course of dealings, the strong similarities between the current purchase orders and the prior transactions clearly suggest their substantive relevance. Thus, the parties's seven-year business relationship—not just the currently disputed purchase orders—has given rise to the plaintiff's injury and reflects the defendant's Indiana contacts.

### 3. Traditional Notions of Fair Play and Substantial Justice

Once sufficient minimum contacts have been established, a defendant can escape jurisdiction only by making a "compelling case" that forcing it to litigate in the forum state would violate traditional notions of fair play and substantial justice. *See Felland*, 682 F.3d at 677; *Burger King,* 471 U.S. at 476.

We balance five factors in determining whether an exercise of jurisdiction in a particular case is reasonable and fair: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest in obtaining the most efficient resolution of controversies. *Id*.

These considerations sometimes serve to measure the reasonableness of jurisdiction when the analysis of minimum contacts would otherwise be insufficient. *Burger King*, 471 U.S. at 477.

On the other hand, the requirements of "fair play and substantial justice" may render an exercise of jurisdiction unreasonable even if the defendant has purposefully engaged in forum activities. *Id* at 477–78.

With respect to the burden imposed on Defendant by a forum selection made by Plaintiff, jurisdictional rules may not be employed in such a way as to make litigation "so gravely difficult and inconvenient" that a party unfairly is at a "severe disadvantage" in comparison to his opponent. *Id.*

Although EarthWalk has stated its intention to call witnesses in or near Virginia to testify in this litigation, and although it has retained a number of computers relevant to its defense in its Virginia location, it has failed to make a "compelling case" that an Indiana forum would be unjustly onerous. Litigation in this forum would not be "so gravely difficult and inconvenient" that EarthWalk would unfairly face a "severe disadvantage" in comparison to Key Electronics. *See Burger King,* 471 U.S. at 474 (explaining that modern transportation and communications mean it is usually not unfair or too burdensome to require a party to defend itself in a state where it engages in economic activity); *see also Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.,* 212 F.3d 1031, 1037 (7th Cir. 2000) ("Easy air transportation, the rapid transmission of documents, and the abundance of law firms with nationwide practices, make it easy these days for cases to be litigated with little extra burden in any of the major metropolitan areas."). EarthWalk representatives have, over several years, made multiple trips to Indiana by use of private aircraft to advance and pursue its business relationship with Key Electronics. Further, they have directed significant correspondence and business-related activities to Indiana over the course of the parties' seven-year business relationship. Hardy Aff. ¶¶ 10–11.

In addition, a state generally has a "manifest interest" in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors, and domestic corporations have an interest in obtaining convenient relief in their own state. *Burger King*, 471 U.S. at 473, 482–83. In this respect, both Indiana and Key Electronics have a significant interest in resolving this dispute in an Indiana forum.

There being no evidence that EarthWalk would be severely burdened or disadvantaged by litigating in this forum, and in light of both Indiana's as well as Key Electronics' interests in proceeding in an Indiana forum, personal jurisdiction in this case is proper and consistent with traditional notions of fair play and substantial justice.

## II. TRANSFER OF VENUE

### Legal Standard

A federal court has discretion to transfer a case based on the doctrine of *forum non conveniens*, when an alternative forum has jurisdiction to hear a case and when trial in the plaintiff's chosen forum would result in "oppressiveness and vexation to a defendant…out of all proportion to a plaintiff's convenience." *Sinochem Int'l. Co. Ltd. v. Malaysia Int'l. Shipping Corp.*, 549 U.S. 422, 430 (2007).

Congress has codified this doctrine and has provided for transfer of venue when a sister federal court is a more convenient place for trial of the action: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

Section 1404(a) is intended to prevent avoidable waste of time, energy and money, as well as to protect parties, witnesses and the public against inconvenience and expense. *Somers*, 2000 WL 1280314, at *1. It also places discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

Under § 1404(a), transfer is appropriate where the moving party establishes that: (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interests of justice." *State Farm Mut. Auto Ins. Co. v. Estate of Bussell,* 939 F. Supp. 646, 650–651 (S.D. Ind. 1996).

The relative weight to be accorded each factor is not spelled out in § 1404(a); rather, "[t]he [required] weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219 n.3 (7th Cir. 1986).

The party moving for transfer, in this case, EarthWalk, has the "burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient," than the transferor forum. *Id.* at 220. In other words, the effect of a transfer cannot be merely to shift the inconveniences from one party to the other. *Moore v. AT & T Latin Am. Corp.*, 177 F. Supp. 2d 785, 789 (N.D. Ill. 2001); *see also In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 665 (7th Cir. 2003) ("[W]hen plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience; and when the inconvenience of the alternative venues is comparable there is no basis for a change of venue; the tie is awarded to the plaintiff.")

## Discussion

As we have concluded, both venue and jurisdiction are proper in this district. Neither party disputes that the Eastern District of Virginia would also be a proper venue. Therefore, we need only address the third prong of the analysis: whether transfer to the Eastern District of Virginia would better serve the convenience of the parties and the witnesses and the interest of justice.

### A. The Convenience of the Parties

We examine first whether the available fora are convenient to the plaintiff and the defendant. When evaluating the convenience of the parties, courts must consider the parties' respective residences and their abilities to bear the expense of trial in a particular forum. "[T]ransfer of an action is not appropriate if its only effect will be to shift the inconvenience from one side to another." *Somers*, 2000 WL 1280314, at *3.

"As an initial matter, the plaintiff's choice of forum is entitled to 'some' weight, especially when the action is brought in the plaintiff's home forum." *Id.* at *2. Traditionally, district courts afford a plaintiff's choice of forum substantial deference. *In re Nat'l Presto Indus., Inc.*, 347 F.3d at 664 ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").

EarthWalk contends that less weight should be accorded the Key Electronics' choice of forum if the sole nexus to the forum is that it is the situs of the plaintiff's damages. *See CMG Worldwide, Inc. v. The Upper Deck Co.*, 2008 WL 4690983, at *3 (S.D. Ind. Oct. 22, 2008). While this principle of law is true, the facts of this case show that not only was Indiana "the situs of the plaintiff's damages," but it is also plaintiff's home forum and state of residency. We

therefore find no basis on which to discount the presumptive weight accorded Plaintiff's choice of venue. The facts also make clear that EarthWalk has the ability to bear the expense of litigating this claim in Indiana. EarthWalk conducted business with an Indiana company on an ongoing basis for seven years, during which, its representatives made multiple trips to the state—each time flying their private plane into the Clark County Municipal Airport. Hardy Aff. at ¶ 10.

Additionally, transferring the venue to the Eastern District of Virginia would force Key Electronics, an Indiana corporation, to travel to another state in order to adjudicate its legal interests. Considered in the light of the weight given to the Plaintiff's choice of home forum and because "transfer of an action is not appropriate if its only effect will be to shift the inconvenience from one side to another," *Somers*, 2000 WL 1280314, at *3, we hold that this factor weighs in favor of an Indiana forum.

### B. The Convenience of the Witnesses

The next required consideration is the convenience to the witnesses. While there is no set weight that we must give to each of the three controlling considerations, courts often conclude that convenience to the witnesses is the most significant of the three factors under section 1404(a). *Id.* at *3; *Seth v. Commodores Transp., LLC,* 2013 WL 5176762, at *3 (S.D. Ind. Sept. 13, 2013).

Defendant EarthWalk has indicated that it intends to call several non-party witnesses, all of whom are located in or near Virginia, to testify in this case and that because these witnesses are concentrated near Manassas, Virginia, it would be significantly more costly to require them to travel to Indiana for trial, as opposed to attending proceedings in Virginia. However, Key Electronics, too, has several non-party witnesses who are located in Indiana and whose testimony

it says will be necessary to prosecute these claims.[3] Pl.'s Resp. 15. This factor, therefore, is a wash.

### C. The Interests of Justice

The third consideration listed in Section 1404(a) is the Court's interest in furthering the administration of justice. When examining the interests of justice, we look at the following factors: (1) the relative ease of access to sources of proof; (2) the amenability of unwilling witnesses to service of process; (3) the cost of attendance at trial of unwilling witnesses; (4) the relationship between the community in which the courts and jurors are required to serve compared to the occurrence at issue in the litigation; (5) the accessibility of premises involved in the litigation; (6) the relative congestion of the court dockets and prospects for earlier trial; and (7) in a diversity case, the relative familiarity of the courts with the state law supplying the applicable rules of decision. *Somers*, 2000 WL 1280314, at *2–3 (citing *Gulf Oil v. Gilbert*, 330 U.S. 501, 508–09 (1947)).

EarthWalk does not dispute that both courts will possess sound knowledge of the applicable law, and that both Indiana and Virginia have equal relationships to the subject matter of this litigation. Def.'s Reply Br. at 4. Rather, EarthWalk maintains that because it has stored assembled computers in its Virginia location, the Eastern District of Virginia is the more convenient forum in terms of access to sources of proof. *Id.* at 5. We fail to perceive from the facts before us, how transportable the assembled computers are, how important they are to the

---

[3] We note that EarthWalk has provided three examples of non-party witnesses it intends to call: Electronic Design & Manufacturing in Lynchburg, Virginia; the Alexandria City School System; and Software Productivity Strategies, Inc. in Rockville, Maryland. Def.'s Br. 13. Meanwhile Key Electronics has not specified the names of the witnesses it intends to call from Indiana, only that it "has several witnesses—many of whom are residents of Indiana but no longer employed by the plaintiff—that will need to be called to prosecute the claims." Pl.'s Resp. 15. However, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff bearing on personal jurisdiction. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012).

case, and what level of difficulty EarthWalk would face in transporting the computers to Indiana. As Key Electronics notes, the Indiana company did not manufacture these computers. It produced circuit boards based on the EarthWalk designs, which have already been transported from Indiana to Virginia, suggesting that transporting these products is not unreasonably burdensome.

Finally, EarthWalk asserts that the docket of the Eastern District of Virginia is less congested than that in the Southern District of Indiana. The relative congestion of court dockets is entitled to some consideration. *Seth*, 2013 WL 5176762, at *4 (comparing congestion in the Southern District of Indiana with the Eastern District of Michigan in deciding to grant transfer); *Somers,* 2000 WL 1280314, at *5 (comparing congestion between the Southern District of Indiana and the Middle District of Tennessee in granting transfer). However, this factor alone is insufficient to support a transfer, at least in this case. *See Am. Commercial Lines, LLC v. Ne. Mar. Inst., Inc.,* 588 F. Supp. 2d 935, 947 (S.D. Ind. 2008) (holding that although convenience weighed somewhat in favor of granting the motion—on the balance, the court remained unconvinced of the need to transfer the litigation.) An analysis of all of the Section 1404(a) considerations here—the Plaintiff's choice of home forum, the neutrality of the governing law, and the convenience of parties and witnesses in Indiana and Virginia—leaves us unconvinced as to the appropriateness of a transfer of this litigation.

## CONCLUSION

For the reasons stated above, personal jurisdiction exists in this forum over the defendant and venue is proper in this district as well. Transfer to the Eastern District of Virginia is unwarranted, there being no showing that justice will be better served by transfer or that

18

convenience to the witnesses will be greater if this case were litigated in Virginia. Defendant's Motion to Dismiss or Transfer is accordingly DENIED.

IT IS SO ORDERED.

Date: 06/16/2014

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana


Distribution:

Anna M. Konradi
BARNES & THORNBURG LLP
anna.konradi@btlaw.com

Joseph C. Chapelle
BARNES & THORNBURG LLP
joe.chapelle@btlaw.com

Van T. Willis
KIGHTLINGER & GRAY, LLP-New Albany
vwillis@k-glaw.com